Next and last case on our argument calendar is Jarvis Roberts v. Police Officer George Aziz. Good morning, your honors. My name is Nicholas Mendocino. I represent the plaintiff appellant Jarvis Roberts. May it please the court. This case is about how we hold police officers to account and whether we'll allow them to assert facts without the scrutiny of a jury when there are reasons to doubt it. The central fact at issue is that the officers and the district court relied upon the officer's assertion that they had an informant who gave them information about the plaintiff. That informant was never recorded in any place at any time in any way until litigation in the 1983 action. But it was corroborated by finding of the gun, wasn't it, the tip? There was a gun found, but that assumes the tip existed, which is what we dispute. They eventually found a gun. The fact that the gun was found and that Roberts was there, isn't that some evidence that there was a tip? Not necessarily, your honor. They could- Why did the police officers show up? They could have been there for any number of reasons. Were they there randomly and they happened to find Roberts and a gun and then they made up the tip? Is that the argument? Not necessarily, your honor. There was a suggestion by the officers when they- Isn't your argument more precisely that the tip didn't mention Mr. Jarvis, but in fact that there was a tip, that there was a gun in the apartment? It's two-pronged, your honor. One is there may have been no tip, or two, there may have been a tip with significantly different content than what they said the tip contained later after finding a gun. They may have had a tip about Mr. Roberts that didn't mention a gun. They may have had a tip about a gun that didn't mention Mr. Roberts, or they might have had a tip about entirely different criminal activity that brought them to that apartment and then conformed the tip to what they actually found. There's no genuine dispute. Is there, based on a deposition of at least two witnesses, that in fact that there was a tip? I believe there is a dispute, your honor. There's a dispute based on the officer's conduct. They came to the scene claiming to be looking for a neighbor by name. If they didn't know who the neighbor was before coming to the scene, how could they have asked for him by name? There's a dispute because they didn't inform the district attorney that they were there on a tip. That district attorney was intending to prosecute these people and would have to establish a chain of causation that led the officers there. Why did they not tell the district attorney that there was a tip that led them to the apartment? That could have been a Brady or Rosario violation. Brady had them under arrest and they had the gun. Why, I mean, it doesn't surprise me that they wouldn't have gone into all the details of what led them to the gun. Well, it surprises me, your honor. They detailed various other things about what led them to there, what led to the investigation. They created memo books that recorded their daily activities so that they would remember it. They created arrest reports and complaint reports that detailed the information of the arrest. But they left out this one fact until depositions in this case, when it served their purposes to defend an arrest that had been thrown out by the criminal court. There's a lot of ways they could have, this situation could have gone. And importantly, we don't have to prove that they had nefarious intent in describing the tip either. They may very well not remember what happened. This might just be sloppiness on their part. But the point is, they didn't record this information, so we can't test it. They say they got the information from a field intelligence officer. No one can describe who that field intelligence officer was, so he or she can be questioned. They say it was produced by a confidential informant. So, they have put in evidence that there was a tip. And your argument is, well, there's a genuine issue as to whether there was a tip. Because of the absence of contemporaneous notes, that kind of thing. So, on that record, including the fact that they showed up and found the gun, etc. Could a reasonable jury find that there was no tip? Yes, a reasonable jury could find that there was no tip. Or a reasonable jury could find that there was a tip with significantly different content than what the officer said. Which would not necessarily serve to create probable cause. A reasonable jury could also find that there was a tip, but that's the point. A jury has to decide that question. The district court took the decision away from the jury when it should have been theirs. The issue is the district court required plaintiff to produce affirmative evidence of something that no plaintiff could ever produce affirmative evidence of. These officers say, before the arrestees ever come into the picture, we got information. We didn't write it down. We didn't record it. We didn't keep track of where we got it, or when we got it, or what specifically it said, or who gave it to us. But believe us that it was there, and it created probable cause. That's a very dangerous standard, your honor. If the police can create information without any documentation, not report it for years later, and then report it in court and defend their actions based upon that, it creates a situation where plaintiffs could never create a dispute of fact. That's the issue here. Obviously, we have to come with something. We can't just give speculation that the tip didn't exist or contain different information. But here, the lack of corroboration creates that. The other thing that creates that is the inconsistencies in what the officers described about the tip. Their own inconsistencies show that they don't remember the facts with specificity. There is some information, some contemporaneous evidence. Officer Turner's memo book says he was debriefed about a gun at 9 PM that night. The DA's memorandum notes that the officers went to the apartment to investigate a gun. They told the father that they had received information about a gun in the bedroom of the apartment. You agree that that evidence exists in the record? Yes, your honor. Why isn't that some evidence? You can call it a tip, you can call it information, but there's evidence that the officers had information that there was a gun in the apartment. They didn't have any information that it was Jarvis Roberts, and that information was contradicted by other statements and actions of the officers. They did describe, when they came to the door, they described looking for a neighbor by name. They came not on a search warrant, they didn't apply to a judge saying we fear an armed assailant is in this residence with children. They came unarmed, without protective armor, without protective gear. From those facts, a reasonable jury could find that they did not have a tip about a gun possessed by the plaintiff appellant. That's the issue, your honor. The jury should be allowed to decide that question. But once they're inside the apartment, can other facts provide the probable cause necessary? Yes, your honor, but the, and I see my time is up. May I answer your question? Of course, finish. Yes, your honor, but the facts of what happened in the apartment are entirely contested. The officers alleged that they were, they found the plaintiff as well as three other men in the room where they found the gun. The plaintiff hotly disputes that claim, and obviously the district court respected that dispute because the plaintiff can give direct evidence of it. But that's the real issue. That was the dispute of fact in this case. And defense counsel, through the litigation, has attempted to dispel that as a dispute of fact by drawing on other facts. But that's the central point, your honors. The officers say that they relied on the plaintiff's presence in the room where they found the gun. That question should be put to the jury. Without resolution of all the, even without all the other issues, that question still remains and should be put to the jury. Thank you. Thank you. We'll hear from the government. Good morning, Daniel Watts-Brown for the appellees. I want to start with Judge Vitale on this last question, which has to do with leaving aside the tip, all the other information that could have led a reasonable officer to believe that Mr. Roberts here constructively possessed the firearm that was found in the unlocked bedroom in the dresser drawer. And I want to step back, and I know you all are very familiar with New York State law and constructive possession. But when it comes to the question of arguable probable cause, the question of clearly established law is important. And so what New York law says here is that a defendant can be convicted of constructive possession of contraband. If there's a, quote, sufficient level of control over the area where the contraband is found. And as you all are also well aware, on qualified immunity, the question is whether existing precedent places the constitutional question beyond debate. And here, I think that there's a very legitimate debate when you leave aside the tip,  Roberts. One of the other people in the bedroom confessed to owning the gun. That's right, Your Honor, and the circumstances of, so this is all undisputed facts right now, or taking the facts according to the appellant. And he was subsequently convicted, wasn't he? He was, Your Honor, and the circumstances of that confession were suspicious given their timing, right? So it was only after the officers had said to the appellant, we believe this gun is yours, and talked to him for some time about his claim that he did not live there, that the person who confessed that, I'm sorry, I now remember that loaded gun in the dresser drawer is mine. And I think that, at the very least, reasonable officers could disagree about the extent to which- They doubted his confession? They did, and that's on the record, Your Honor. They believe that it was prompted, and they testified that it was prompted by Mr. Roberts' protestations, which we now know he faced more time for this gun. Weren't these separate conversations in private places? I mean, Robert Massey wasn't there when they questioned Jarvis Roberts, was he? He wasn't in the room. I believe the questioning was in the living room, Your Honor, and it was only- I thought they took each one of them privately away to talk to them. Am I wrong about that? I don't know, Your Honor. I don't think that's material here as to the question of whether the officers would want to discredit or have reason to question a confession that only happened after some time passed and where the confessing person, it's undisputed, claimed that they had forgotten about this weapon and then suddenly remembered it only after the passage of some time. Turning to the question of arguable probable cause, regardless of the tip, I think that what's clear, and the clearly established law according to the appellant, is that there must be some fact-suggesting knowledge of the contraband above and beyond just mere proximity. And so, factors that are relevant to that analysis are the extent to which, for instance, the contraband is in plain view or locked up or somewhere in between those. The extent to which the defendant had control over the premises, either through ownership or tenancy or residency, and then also the degree of access to the room where the contraband is. And there are many gray areas as to all of these factors. There's evidence from which reasonable officers certainly could have concluded that Mr. Roberts was in fact a resident of this apartment. There's- They arrested three out of the four guys? They arrested, and this is, yes, that's right, your Honor, they arrested four people. They arrested four, all four of them. Yes, right, and that was based on the officer's testimony, which is disputed that they found all four in the bedroom. But what we're looking at on summary judgment here is the facts viewed in the appellant's favor. We're arresting all four. The officer's stated reason was that they found all four in the bedroom where the gun was recovered from. But looking at the facts as appellant contends them to be, right? The appellant was right in the hallway near the bedroom. It's undisputed the bedroom was unlocked, and it's undisputed that the gun was found in a dresser drawer. And it wasn't in some locked container, and it was in fact found very quickly by police. This wasn't something that was very well hidden. And so I think a reasonable officer could have believed that this case was very similar to the facts in the case of People versus Palin, which we cite in our brief. In which- What was the basis for arresting all four other than mere presence? Well, Your Honor, for two of the people who are not here before this court, the basis was their presence in that bedroom and access on that ground. Well, that sort of devalues the tip. If four people were there and anyone could have taken constructive possession, and you say this was all motivated by the tip. Well, Your Honor, the officers all testify that the tip was an additional basis to arrest Mr. Roberts. And in fact, that fact, right, that fact strongly supports that this tip existed, because otherwise, as you're suggesting, right, the tip in some ways vitiates probable cause as did the two others, right? And so the officers certainly have no reason or incentive to make up a tip that, you know, hurts their cases against the other two, right, as you're suggesting there. So we'll argue that that's evidence that it didn't exist? Why would they have arrested the other two if they had a tip that it was Roberts? Well, Your Honor, because as they testify, right, they found- they did that because they found all four people in the bedroom according to them. Now that point is disputed. And the question for this court is, right, whether there was probable cause to arrest Mr. Roberts. And I think in light of the tip and certainly in light of all the other factors, which- and turning to the bedroom itself, right, the officers, or at least a reasonable officer, could believe, based on the information available then, that Mr. Roberts not only lived in the apartment, but in fact lived in bedroom number two. And that's because the officers were focusing their search on only two bedrooms, as the co-plaintiff testified. That's what the officers said. They said, we're looking at bedroom two and bedroom four, because they knew that there was the family with the child in bedroom three. They knew that the grandmother was in bedroom one. So there were only two bedrooms the officers were focused on, and the uncle said, bedroom four belongs to me and my wife, which means that if Mr. Roberts lives in the apartment, as the officers had reason to believe, it had to be in the bedroom where the gun was found, which undisputedly has multiple beds in it, right, which further weighs in support of a finding, right, that he had access to this bedroom, had access to the dresser drawer, and that's the question on constructive possession. And so we posit that reasonable officers, at the very least, could disagree as to whether Mr. Roberts constructively possessed this weapon. Thank you. Thank you, Counsel. Mr. Mendocino, you have three minutes for rebuttal. Thank you, Your Honors. What we've just heard throughout the argument is a lot of facts. We've heard a lot of dispute about who was where, where they were, when they were, what the officers knew, when they knew it. Those are fact questions that a jury should resolve. The court here is not in a great position to evaluate them because you haven't heard any witnesses. The district court, in the same manner, has not heard the witnesses or heard them exposed to cross-examination. And that's what we need here. We need fact finding to determine what actually happened that day. There's a dispute about where the men were. There's a dispute about what the officers knew and when they knew it. And we should be allowing a jury to decide that. But qualified immunity overwhelms our desire for factual findings, doesn't it? It does, unless the fact finding is so tied into the legal question that it cannot be determined as a matter of law, which is the case here. With respect to counsel's argument that the residence was known and that would be enough, I submit two things. First, the officers themselves deny that they knew who lived in that apartment. As I quoted in the brief and cited to detailed passages, the officers were questioned. Other than being physically present in the bedroom, are you aware of anything that tied any of the four men to that bedroom? Answer, I don't know either way. They didn't look for mail. They didn't look for anything that would tie the people to that residence. In fact, Jarvis Roberts claimed he lived somewhere else, didn't he? Correct, Your Honor. He still maintains he lived somewhere else, and he maintains that he gave a different address when he was asked. His address was listed in an arrest report, which the district court relied upon as his address. Although he had an ID with that address. Didn't he have an ID? He had an ID, and no one knows what information was contained on that ID. He does not recall when he changed the ID. The officers didn't make copies or actually said they didn't recall even seeing an ID. You mean the ID is not in the record? It's not in the record what is on the ID, and it's specifically in the record that Mr. Roberts said, I don't remember what was on my ID. It was not recorded in any way. Did he say it was possible that it showed his address as that? Yes, Your Honor. He said it's possible it still showed that address where he had lived somewhere. We don't know what it actually showed. Exactly, Your Honor. No one knows what it shows. The officers said they didn't even remember if they saw an address and couldn't recall why they put the address of the arrest in the arrest report, but then the district court relied upon that document, which was created by the officers, to show the officers could have reasonably known he resided there. That's just circular reasoning that doesn't get them residence. But even if they had residence, this is not like the cases where we have one person who lives in a one-bedroom apartment and it is attributable to the contraband found there. How can you claim he was standing when approached by the police officers? He says he was in a different bedroom of the apartment. There is a floor plan that we provided that was created by the plaintiffs. He says he was in the fourth bedroom, which is down the hall, and that as the officers started to come in, he started to see what was going on. So there's a little question of fact about exactly where he was in the hallway. But that's the answer, Your Honor. He was in a different bedroom and started to come out as the officers approached. He was in the hallway when the officers saw him. That's a disputed fact, Your Honor. There's some testimony that he was in the hallway or in the bedroom looking into the hallway. What was his testimony? His testimony was that he was in the bedroom when he first noticed the officers down the hallway. The other bedroom? The other bedroom, bedroom four. He maintains that he was never in the second bedroom where the gun was found. And there were depositions of other residents, were there not? There were depositions of the other plaintiffs who were not residents to the apartment. But they were present. Well, the officers claim they were all present together in the room. Each of them denied that fact, but they obviously deny that they were there, so theoretically they could not say. They deny that they were there at all. They deny that they were in the second bedroom. Where the gun was. Where the gun was. They don't deny they were in the apartment, obviously. Correct, Your Honor. Where did they say they were in the apartment? Gregory Roberts claimed to be in the living room of the apartment, and Kendall Massey said he was in the fourth bedroom and then was moving about the apartment as the search warrant. Where was Furman Massey? Furman Massey passed away before this litigation, so hasn't given any testimony, Your Honor. He was charged with possession of the gun? He was. Convicted? He was charged and convicted on a plea of guilty to possession of the gun. And to answer the question of where he gave the statement, he initially gave a statement in the living room, then gave written and oral statements at the police precinct confirming it was his gun. Thank you. Thank you, Your Honor. Thank you both for a reserved decision. The next two cases on our calendar are on submission, so I will ask the clerk to adjourn court. Court is adjourned.